FILED
2011 Dec-14  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MARY CROMER,

      PLAINTIFF,

v.                                                    CASE NO.: CV-11-J-496-S

WINN-DIXIE and WINN DIXIE
MONTGOMERY, LLC,

      DEFENDANTS

### MEMORANDUM OPINION

Pending before the court is defendant's motion for summary judgment and brief and evidence in support of said motion (docs. 17-19).  The plaintiff did not respond to said motion.[1]

Plaintiff commenced this action by filing a complaint alleging the defendant subjected her to a hostile environment and retaliated against her, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.,* because she suffers from severe dyslexia.  Having considered the pleadings and the defendant's memorandum and evidentiary submissions, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material

---

[1]Pursuant to Exhibit A of the Scheduling Order entered by the court on April 11, 2011, the plaintiff had fourteen (14) days to respond to the motion for summary judgment from the date said motion was filed.  Defendant's motion was filed on November 7, 2011.  On November 16, 2011, the court granted the plaintiff's motion seeking additional time to response, and allowed the plaintiff until November 28, 2011, to file a response. To date, no response has been received.

fact remain and the defendant is entitled to judgment in its favor as a matter of law.

## FACTUAL BACKGROUND

The court finds the following relevant facts to be undisputed:

In 1999, Cromer started working as a cashier at Winn-Dixie's Moody, Alabama, location. Cromer Dep. at 77.  In addition to her duties as a cashier, Cromer placed orders for candy and other grocery items. *Id.*  As a cashier, Cromer was required to read and write.  *Id.*  Cromer left Winn-Dixie in 1999,  and went to work as a cashier at Calloway's Country Corner.  *Id.*  at 60-61.  She worked there from 1999 to 2006.  *Id.* at 61. Her duties included operating the store alone for one week while the store owner went on vacation. *Id.* at 62-63.

In June 2007, Cromer again applied for a job with Winn-Dixie at its Pell City, Alabama location. Cromer Dep. at 115, 201. Winn-Dixie hired Cromer and she worked in the Deli/Bakery.  The position requires that the person be able to read and write functionally. Ex. 3, Job Description for Deli Associate, at P-000242.  Cromer testified that her entire job in the Deli/Bakery required being able to read. Cromer Dep. at 222.  Cromer worked in the Deli/Bakery area from June 2007 through November 2007.  Cromer Dep. at 123.  During this period of time, Cromer claims her supervisor told her she read too slowly, did not know the work, and was stupid. *Id.* at 128, 201. There is no evidence that she complained to anyone about these

comments, which occurred more than 180 days before she filed her charge with the

EEOC in January 2009.  Ex. 4, Charge of Discrimination, at P-000148.

In November 2007, Cromer began working as a Winn-Dixie cashier.  Cromer

Dep. at 72. No one made unkind comments to CromCromer while she was a cashier.

*Id.* at 207.  In May 2008, Cromer transferred back to the Deli/Bakery. *Id*. at 201,

209-10.  After being transferred back to the Deli, Cromer was first supervised by

Donna Adams ("Adams"). *Id*. at 249.  Cromer claims that Adams referred to Cromer

as "Mary Bell" for three months *Id.* at 250-252.  Cromer says that this is Adams's

dog's name. *Id*. at 251.  Cromer claims that Adams also called her stupid "several

times." *Id.* at 252. Cromer complained about Adams calling her Mary Bell and

following her complaint, Adams stopped doing this*. Id.* at 258.  Cromer does not

remember ever complaining to anyone about being called stupid*. Id.* at 260.

The Deli and Bakery departments were split in about August 2008, and Cromer

began reporting to Pamela McKenzie ("McKenzie") who was supervisor in the Deli.

Cromer claims that McKenzie called her stupid on "one or two occasions" and

criticized her for not reading or for reading too slowly. *Id.* at 266-67.  According to

Cromer, McKenzie refused to help anyone read things. *Id*. at 270, 273.

Cromer testified that she has dyslexia. Cromer said her parents were told this

by her school in "second or third grade." *Id*. at 35. Cromer testified that she

completed the seventh grade. *Id*. at 28. She was able to get that far because "I had people that read things to me." *Id*. at 29.  The last time anyone told her that she has dyslexia was in seventh grade. *Id*. at 37.  Cromer has never been told by a doctor that she has dyslexia. *Id*. She determined that she had dyslexia after she received and reviewed some materials from "the Dyslexia Institute," possibly twelve years ago. *Id*. at 39, 45.  Cromer has never sought treatment for dyslexia. *Id. at* 41-42.

Cromer testified that she has the "severe" form of dyslexia which causes her to "see your numbers backwards" and "see your letters backwards," primarily her "Bs and Ds." *Id.* at 48.  She contends that she is basically unable to read anything. *E.g., id.* at 22.  However, she testified that "there's some things [she] can write and read. *Id*. at 30.  She has signed numerous personnel records and taken many written employment training tests during her time at Winn-Dixie. *E.g.*, *id*. at 65, 103, 162-83).

Cromer was never disciplined or reprimanded in any way for her alleged inability to read or write.  Cromer dep. at 139-40, 328-330.  She sometimes received reading assistance from co-workers.  *Id*. at 270. Cromer developed her own notebook to help her remember codes and do her job. *Id*. at 271.

Cromer had a number of performance problems during her employment at Winn-Dixie for which she was written up.  On November 14, 2008, Cromer received

a corrective action for failing to follow policies regarding proper disposal of food. Ex. 5, Winn-Dixie Associate Action Form, at P-000254. On November 19, 2008, Cromer was warned about the poor condition of the Deli area. Ex. 5, at P-000256. Store Director Pat Trueheart ("Trueheart") counseled Cromer about this. *Id*.

On November 29, 2008, a Winn-Dixie customer arrived at the Deli to place a food order. Cromer Dep. at 293; Ex. 5, at P-000258-59, 262, 264, 268. Cromer says her back was turned to the customer. Cromer Dep. at 293. Cromer claims that her co-employee (Tracy Mahan ("Mahan")) stated that she (Mahan) was going to have to take care of the customer "because everybody else is too stupid to do the job." *Id*. Cromer responded, "I'm getting me an attorney." *Id*. According to several witnesses, Cromer also threatened Mahan during the dispute, stating Mahan's "ass" would "end up dead." Ex. 5, at P-000264. Several Winn-Dixie employees submitted signed statements corroborating the threat made by Cromer. Ex. 5, at P-000258-59, 262, 264, 268, Winn-Dixie 000046. Mahan also contacted local police authorities about the threat. Ex. 6, Alabama Uniform Incident/Event Report, P-000266.

Following an investigation and consultation with Human Resources, Trueheart decided to terminate Cromer's employment. Ex. 7, Trueheart Aff. at ¶ 6; Ex. 5, Winn-Dixie Associate Action Form, P-000268. Trueheart made his decision based on the statements of the witnesses to the incident, as well as previous misconduct by

Cromer.  Ex. 5, Winn-Dixie Associate Action Form, P-000268; Ex. 5, P-000258-59,

262, 264, Winn-Dixie 000046.  Cromer admits that she was told her termination was

due to her threatening Mahan, which is a "fireable offense." Cromer Dep. at 298.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of

material fact, leaving final judgment to be decided as a matter of law. *See* Federal

Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal

element of the claim under the applicable substantive law which might affect the

outcome of the case.  It is "genuine" if the record taken as a whole could lead a

rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121

F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the

light most favorable to the non-moving party, with any doubt resolved in the

nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct.

1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the

non-moving party to come forward with evidence to establish each element essential

to that party' case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907

F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## LEGAL ANALYSIS

The plaintiff brings ADA claims for disparate treatment/hostile environment and retaliation based on the above set of facts. The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56. The court must still find that summary judgment is appropriate from the pleadings and the evidence.

However, "the language of Rule 56(c) mandates the entry of summary judgment ...

against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial."[2] *Celotex Corp.,* 477 U.S. at 322-23.  With these standards in mind, the

court considers each of the plaintiff's claims.

The ADA provides that no covered employer shall discriminate against a

"qualified individual on the basis of disability in regard to job application procedures,

the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment."  42 U.S.C. §

12112(a).  To establish a prima facie case under the ADA, the plaintiff must show

that (1) she has, or is perceived to have, a disability; (2) she is a qualified individual

"which is to say, able to perform the essential functions of the employment position

---

[2]In its current incarnation, Rule 56(c)(1), Fed.R.Civ.Pro., states as follows:

> (1)  **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Federal Rules of Civil Procedure Rule 56.

that [s]he holds ... with or without reasonable accommodations; and (3) she was discriminated against because of the disability." *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir.2004) (quoting *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir.2002). *See also Greenberg v. Bellsouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007). The plaintiff must also show that the employer was aware of, meaning had "actual knowledge" of the disability and that the unfavorable employment decision was due to, or because of, the disability. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11th Cir.2005), citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 800 (11th Cir.2000).

Although the defendant disputes whether the plaintiff "has, or is perceived to have," a disability, the court accepts that the plaintiff could establish that dyslexia is a "disability" as that term is defined by the statute, solely for purposes of this opinion.[3] More problematic for the plaintiff is the lack of any shred of evidence that Mr. Trueheart knew the plaintiff suffers from dylexia, perceived her as disabled in any way, or knew of the plaintiff's complaints of a hostile environment. The sole evidence before the court concerning Mr. Trueheart's knowledge is in his affidavit.

---

[3]Based on the record before it, and viewing the evidence in the light most favorable to the plaintiff, the court could also conclude that for purposes of considering a summary judgment motion, the plaintiff does suffer from dyslexia, as she testified to that in her deposition.

He states "I never witnessed or became aware that anyone called Ms. Cromer 'stupid,' 'useless,' or any other offensive name.  Trueheart affidavit, at ¶ 3.  He was never informed by the plaintiff that she had dyslexia or that she had difficulty reading or writing.  *Id.,* at ¶ 4.

Even if plaintiff could pass the hurdle of establishing the store manager had any inkling she claimed to suffer from a disability, the plaintiff must still establish a hostile working environment.  "Workplace conduct is not measured in isolation. Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances." *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 808 (11th Cir.2010) (citations and quotation marks omitted).  The plaintiff bears the burden of proving that the environment was both subjectively and objectively hostile. *Harris v. Forklift Sys*.,  510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Because the plaintiff has failed to come forth with any evidence, she necessarily fails in this burden.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). So long as the non-moving party has had an

ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Plaintiff's allegations from the complaint, "completely unsupported by any other record evidence and undermined by [her] own testimony, is insufficient to resist summary judgment.*" See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.... One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.").

For the same reasons plaintiff cannot prevail on her hostile environment claim, she also cannot prevail on her retaliation claim.  Even assuming the plaintiff stated at work that she was going to hire an attorney, there is no evidence that Trueheart know about this pronouncement.  *See e.g.*, Trueheart affidavit, at ¶ 8.  To establish a prima facie case of retaliation, the plaintiff must show that she (1) engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999). *See also Gupta v. Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (abrogated on other grounds, *Crawford v. Carroll,* 2008 WL 2246677, 9 (11th Cir.2008)).

In the facts before this court, the plaintiff has failed to offer any evidence of a causal connection between her threat to hire an attorney, and her termination for threatening another employee. For the same reasons set forth above, the plaintiff has failed to establish the existence of a genuine issue of material fact on this claim.

## V. CONCLUSION

Having considered the foregoing, and being of the opinion that the defendant's motion for summary judgment is due to be granted on all of the plaintiff's claims, the court shall grant said motion by separate Order.

**DONE** and **ORDERED** this the 14th day of December, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE